## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,     )
            )
          Plaintiff,     )
            )
v.           )     **Case No. 11-CR-0104-CVE**
            )         **(13-CV-0263-CVE-FHM)**
MARCOS BENITEZ,     )
a/k/a "Juan Villafuerte-Urquiza",     )
            )
          Defendant.     )

## OPINION AND ORDER

On May 2, 2013, defendant Marcos Benitez, a federal prisoner appearing without counsel, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 41. Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I.

On June 10, 2011, a criminal complaint was filed against defendant alleging defendant possessed methamphetamine with intent to distribute under 21 U.S.C. § 841. Dkt. # 1. The Court found that defendant was indigent and unable to obtain counsel, and appointed Stephen Greubel to represent defendant. Dkt. # 9. On July 12, 2011, a grand jury returned an indictment charging defendant with illegally possessing a firearm under 18 U.S.C. §§ 922(g)(5), 924(a)(2) (count one), possessing methamphetamine with intent to distribute under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) (count two), and possessing a firearm in furtherance of a drug trafficking crime

under 18 U.S.C. § 924(c)(1)(A)(i) (count three). Dkt. # 13. On September 9, 2011, defendant plead guilty to counts two and three of the indictment pursuant to a written plea agreement. Dkt. ## 19, 21, 22.

The plea agreement contained an appellate and post-conviction waiver that provides, in part, that "[t]he defendant waives the right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver . . . ." Dkt. # 22, at 3. The plea agreement states that defendant knowingly and voluntarily agreed to waive certain appellate and post-conviction rights in "consideration of the promises and concessions made by the United States in this plea agreement . . . ." Id. Defendant also "expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights . . . ." Id. at 4. In the plea agreement, defendant admitted that:

> I, **MARCOS BENITEZ,** admit that on May 27, 2011, I knowingly and intentionally possessed methamphetamine in Tulsa, Oklahoma, in the Northern District of Oklahoma. I admit that I intended to distribute the methamphetamine. I accept the Tulsa Police Lab analysis that the weight is 753.29 grams of a mixture and substance containing a detectable amount of methamphetamine. I also admit that on May 27, 2011, I knowingly possessed the 9mm firearm described in the indictment for my protection and for the protection of the methamphetamine and the proceeds of the sale of that methamphetamine.

Id. at 7. Defendant also admits that he "reviewed every part of [the plea agreement] with my attorney . . . . Further, I have consulted with my attorney and fully understand my rights with respect to sentences . . . ." Id. at 17. Additionally, defendant declared that he was "satisfied with the representation of my attorney in this matter." Id.

Defendant filed a petition to enter a plea of guilty. Dkt. # 20. In that petition, defendant represented that:

On May 27, 2011, in Tulsa, Oklahoma, which is within the Northern District of Oklahoma, I knowingly possessed a firearm in furtherance of the drug trafficking crime alleged in Count II. The firearm was a Sturn [sic], Ruger & Co., Inc., Model P-89 9mm caliber pistol, which I kept in my home to protect me and the methamphetamine which was stored in my home.

Id. at 2. Defendant stated that his attorney "reviewed the charge, discovery and applicable law with me. We have discussed possible defenses, pretrial motions, jury trial and the sentencing guidelines."

Id. Defendant also stated that "I believe that my attorney has done all that anyone could do to counsel and assist me, AND THAT I AM SATISFIED WITH THE ADVICE AND HELP [HE] HAS GIVEN ME." Id. at 4 (emphasis in original). Defendant further stated that "I swear that I have read, understood, and discussed with my attorney, each and every part of this Petition to Enter Plea of Guilty . . . ." Id. at 5. Defendant stated that he was informed and understood "that the sentences must be consecutive to one another for a total statutory mandatory minimum sentence of 15 years." Id. at 3.

During the change of plea hearing, the Court reviewed the appellate and post-conviction waiver with defendant in detail:

THE COURT: Do you understand that by entering into your plea agreement and entering a plea of guilty, you are agreeing to certain waivers of appellate and post-conviction rights contained in paragraph 3 of your plea agreement?

THE DEFENDANT: Yes.

THE COURT: I have an obligation to review that with you on the record. Do you understand that in consideration of the promises made by the United States in your written plea agreement, you are knowingly and voluntarily agreeing to waive the right to directly appeal your conviction and sentence pursuant to 28, U.S.C., Section 1291, and/or 18, U.S.C., Section 3742(a), except that you reserve the right to appeal from a sentence which exceeds the statutory maximum?

THE DEFENDANT:  Yes, ma'am.

.   .   .

THE COURT:        Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of appellate and post-conviction rights contained in your written plea agreement?

THE DEFENDANT:   Yes.

.   .   .

THE COURT:        And do you understand you are expressly acknowledging that Mr. Greubel has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as set forth in your written plea agreement?

THE DEFENDANT:  Yes, ma'am.

Dkt. # 50, at 16-18.  The Court also reviewed the fact that defendant's sentences would be

consecutive:

THE COURT:        Do you understand that you face a mandatory minimum as to each of these counts, and that the second one is consecutive to the first one?

THE DEFENDANT:  Yes, ma'am.

THE COURT:        Do you understand that as to Count Two, you're facing a mandatory minimum of not less than 10 years, and as to Count Three you're facing a mandatory minimum of not less than five years consecutive to any other sentence?

THE DEFENDANT:  Yes, ma'am.

Id. at 10-11.  Defendant also admitted that his firearm was used in furtherance of his drug

trafficking:

| THE COURT: | And you understand that you are agreeing that you possessed that firearm in furtherance of the crime in Count Two; do you understand? |
|---|---|
| THE DEFENDANT: | Yes. |

      . . .

| THE COURT: | And you kept it in your home to protect you and the methamphetamine stored in your home; is that correct? |
|---|---|
| THE DEFENDANT: | Yes. |

Id. at 25-26. Defendant stated that he was satisfied with Mr. Greubel:

| THE COURT: | Have you fully discussed those charges and the case in general with Mr. Greubel as your counsel? |
|---|---|
| THE DEFENDANT: | Yes, ma'am. |
| THE COURT: | Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney, Mr. Greubel? |
| THE DEFENDANT: | Yes, ma'am. |

Id. at 6-7. Defendant stated that he understood the consequences of a guilty plea. Id. at 14. The

Court accepted his guilty plea. Id. at 32.

The Court entered a judgment and commitment on May 14, 2012. Dkt. # 39. Defendant was

sentenced to a term of 123 months; "63 months as to Count Two and 60 months as to Count Three,

to run consecutively to Count Two." Id. at 2.[1] Defendant did not directly appeal. Dkt. # 41, at 2.

Defendant's conviction became final on May 28, 2012, when his time to file a direct appeal expired.

See Clay v. U.S., 537 U.S. 522, 527 (2003). On May 2, 2013, defendant filed his motion to vacate,

---

[1]   Defendant's sentence for count two was lower than the mandatory minimum because of a motion by the government pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. Dkt. # 37; Dkt. # 38; Dkt. # 55, at 1.

set aside, or correct sentence pursuant to § 2255. Dkt. # 41. Thus, defendant's motion was filed within the one year statute of limitations provided by section 2255(f), and his motion is timely.

## II.

Defendant raises four claims in his section 2255 motion.[2] He asserts that his sentences should have run concurrently. Id. at 23. Defendant also argues that this Court failed to explain why his sentences were imposed consecutively. Id. He argues that the "safety valve" provision of 18 U.S.C. § 3553(f) should have been applied to his sentence. Id. at 21-22. Additionally, he states that he should have received a reduced sentence pursuant to Fed. R. Crim. P. 35. Id. at 23. Finally, he alleges that he received ineffective assistance of counsel. Id. at 21.

### A.     Waiver

The government argues that defendant has waived his right to post-conviction relief with regard to his sentence. Dkt. # 54, at 19. The government argues that this waiver prevents defendant from arguing that his sentences should have run concurrently or that the "safety valve" provision

---

[2]     Defendant's motion is not a model of clarity. See generally Dkt. # 41. Consistent with Supreme Court and Tenth Circuit precedent, the Court will construe defendant's pro se pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002). "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)). The Court has no obligation to construct legal arguments for defendant or fashion an argument for defendant if his motion is incoherent or unintelligible. See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991).

of 18 U.S.C. § 3553(f) should have been applied to his sentence.  Id.[3]  The Tenth Circuit has

established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal [or post-conviction proceeding] falls within the scope of the waiver of appellate [and post-conviction] rights; (2) whether the defendant knowingly and voluntarily waived his appellate [and post-conviction] rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curium).  In determining the

scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor

of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable

understanding at the time of the guilty plea."  United States v. Novosel, 481 F.3d 1288, 1291 n.1

(10th Cir. 2007).  Challenges to the voluntariness of a guilty plea generally do not fall within the

scope of a waiver.  United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011).

Hahn requires the consideration of two factors in considering whether a defendant knowingly

and voluntarily agreed to an appellate and post-conviction waiver.  First, the court "examine[s]

whether the language of the plea agreement states that the defendant entered the agreement

knowingly and voluntarily."  Hahn, 359 F.3d at 1325.  Second, the guilty plea must be the result of

an adequate colloquy under Fed. R. Crim. P. 11.  Id.

The first Hahn factor is whether defendant's claims fall within the scope of his waiver.  The

plea agreement contains an appellate and post-conviction waiver stating that "defendant waives the

---

[3]  Some of defendant's other claims also appear to fall within defendant's waiver.  However, since the government has not sought to enforce the waiver as to those claims, this Court shall not do so.  See United States v. Abston, 401 F. App'x 357, 365 n.4 (10th Cir. 2010) ("[B]ecause the government has not sought to enforce the collateral-attack waiver, it has forfeited its ability to do so.") (This and all other unpublished opinions are not precedential but are cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.); see also United States v. Calderon, 428 F.3d 928, 931 (10th Cir. 2005) (refusing to enforce an appellate waiver where the government had not sought its enforcement.

right to collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel which challenge the validity of the guilty plea or this waiver . . . ." Dkt. # 14, at 3. Neither defendant's claim that his sentences should run concurrently, nor his claim that the "safety valve" provision of 18 U.S.C. § 3553(f) should have been applied to his sentence, challenge the validity of defendant's guilty plea or the validity of the post-conviction waiver, and these claims are waivable. See United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001). The claims raised by defendant collaterally attack his sentence, and, thus, his claims fall within the scope of the post-conviction waiver in the plea agreement.

The second Hahn factor is whether defendant knowingly and voluntarily agreed to the appellate and post-conviction waiver. Under Hahn, the Court must initially consider whether the plea agreement states that defendant knowingly and voluntarily agreed to the waiver. Hahn, 359 F. 3d at 1325. The plea agreement in this case plainly states that defendant "expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights . . . ." Dkt. # 22, at 4. Thus, it is clear that defendant admitted in the plea agreement that he knowingly and voluntarily waived certain appellate and post-conviction rights. The Court must also consider whether defendant's guilty plea was the result of an adequate Rule 11 colloquy. Hahn, 359 F.3d at 1325. The Court has reviewed the transcript of defendant's change of plea hearing and the transcript clearly shows that there was an adequate Rule 11 colloquy. The Court reviewed each section of the appellate and post-conviction waiver with defendant, and defendant stated that he understood the rights he was giving up by accepting the plea agreement. Dkt. # 50, at 16-18. The Court also reviewed each of the constitutional rights that defendant waived by entering a guilty plea, and

defendant stated that he understood that he was voluntarily waiving those rights. Id. at 18-21. Defendant's guilty plea was accepted following a thorough Rule 11 colloquy and the Court finds that defendant knowingly and voluntarily agreed to the appellate and post-conviction waiver.

Finally, the Court must consider whether enforcement of the post-conviction waiver will result in a miscarriage of justice. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful." Hahn, 359 F.3d at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. See United States v. Green, 405 F.3d 1180, 1191-94 (10th Cir. 2005) (stating that courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005). There is nothing in the record suggesting that enforcement of the post-conviction waiver

will result in a miscarriage of justice.[4]  In fact, defendant received a sentence below the statutory mandatory minimum of 10 years imprisonment for count two because of a motion by the government pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.  Dkt. # 37;  Dkt. # 38; Dkt. # 55, at 1.  No miscarriage of justice will result from enforcement of the post-conviction waiver in the plea agreement.  Defendant has waived his right to collaterally attack his sentence based upon his claims that his sentences should have run concurrently or that the "safety valve" provision of 18 U.S.C. § 3553(f) should have been applied to his sentence.

**B.      Procedural Bar**

The government also argues that defendant is procedurally barred from raising his claims that his sentences should have run concurrently or that the "safety valve" provision of 18 U.S.C. § 3553(f) should have been applied to his sentence because they were not raised on direct appeal.  Dkt.

---

[4]      Defendant has not alleged that the district court relied on an impermissible factor, that counsel was ineffective, specifically, with regards to negotiating the waiver, that the sentence exceeds the statutory maximum, or that the waiver is unlawful.  See generally Dkt. ## 41, 56.  Additionally, as discussed infra, defendant's more general claims of ineffective assistance of counsel are without merit.

# 54, at 20-21.[5] Tenth Circuit precedent is clear that "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994). Criminal defendants may not use section 2255 motions as a substitute for a direct appeal, and failure to raise an issue at trial or on direct appeal creates a procedural bar. United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004); United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). Procedural default can be excused if defendant can show that cause and prejudice exist to excuse the default or that a fundamental miscarriage of justice has occurred. Barajas-Diaz, 313 F.3d at 1247. Ineffective assistance of counsel constitutes "cause" excusing a procedural default. United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

Defendant did not raise either of the identified arguments on direct appeal, and they are, therefore, procedurally barred. In order to overcome the procedural bar, Defendant must show that he had cause for his failure to raise the arguments earlier. Defendant has presented no cause for his failure to raise these arguments--other than his claims of ineffective assistance of counsel, which,

---

[5] At least one of defendant's other claims appears to be subject to the procedural bar. Although the government has not raised the procedural bar as to that claim, this Court may raise it sua sponte. Whether this Court should do so depends on a variety of factors, including the interests of judicial efficiency, finality, the prompt and orderly administration of justice, and the conservation of scarce judicial resources. United States v. Wiseman, 297 F.3d 975, 979-80 (10th Cir. 2002). "Raising and enforcing the procedural bar sua sponte advances the interest in finality and encourages efficiency by requiring a defendant to present issues on direct appeal rather than in a collateral attack." Id. at 980. However, in this case, those interests are outweighed by other factors. The government's failure "to assert the procedural bar defense weighs heavily against its sua sponte enforcement." Id. Additionally, because defendant would have to be afforded the opportunity to file a supplemental brief on the issue, resolution of the procedural bar issue would delay the resolution of defendant's section 2255 motion and would not serve the interests of judicial efficiency or the prompt and orderly administration of justice. Id. This Court declines to raise and enforce the procedural bar sua sponte as to defendant's other claim.

as discussed underline(infra), are without merit--, nor has he demonstrated that a fundamental miscarriage of justice will result from the application of the procedural bar. Defendant's claims that his sentences should have run concurrently or that the "safety valve" provision of 18 U.S.C. § 3553(f) should have been applied to his sentence are procedurally barred, except to the extent to which they form a basis for ineffective assistance of counsel.

## C.     Consecutive Sentences

Even if defendant's claim that his sentences should have run concurrently were not waived and procedurally barred, it would still fail. Defendant pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924. Dkt. # 22. This section mandates consecutive sentences; consecutive sentences are mandatory, not optional. 18 U.S.C. § 924(c)(1) (2012); United States v. Gonzales, 520 U.S. 1, 11 (1997); United States v. Lanzi, 933 F.2d 824, 825-26 (10th Cir. 1991). Defendant's assertion that his sentences should have run concurrently is without merit.

## D.     The "Safety Valve" Provision

Likewise, even if defendant's claim that 18 U.S.C. § 3553(f) should have been applied to his sentence were not waived and procedurally barred, it would still fail. The application of section 3553(f) requires that "the defendant did not . . . possess a firearm . . . in connection with the offense." 18 U.S.C. § 3553(f). Defendant argues that he never possessed the firearm while drug trafficking; he maintains that the firearm was at his house, not in his possession, and was used solely for personal protection. Dkt. # 56, at 2. This is contrary to defendant's previous admissions. In his plea agreement, defendant admitted that he "knowingly possessed the 9mm firearm described in the indictment for my protection and for the protection of the methamphetamine and the proceeds of the

sale of that methamphetamine. Dkt. #22 at 7 (emphasis added). Defendant repeated this admission during his change of plea hearing, admitting that he possessed the firearm in furtherance of his drug trafficking and that he used it to protect the methamphetamine stored in his home. Dkt. # 50, at 25-26. In his petition to enter a plea of guilty, defendant admitted that he "knowingly possessed a firearm in furtherance of the drug trafficking crime alleged in Count II," and that the firearm was "kept in my home to protect me and the methamphetamine which was stored in my home." Dkt. # 20, at 2. Even if not waived and procedurally barred, this claim would fail.

**E.      Fed. R. Crim. P. 35(b)**

Defendant requests that the Court reduce his sentence pursuant to Fed. R. Crim. P. 35(b). Dkt. # 41, at 23. Defendant believes that, because he has provided, and is continuing to provide, information to the government, the Court may invoke Fed. R. Crim. P. 35(b) to reduce his sentence. Id. at 23-24. However, this Court may not invoke Fed. R. Crim P. 35(b) absent a motion by the government.[6] United States v. Perez, 955 F.2d 34, 35 (10th Cir. 1992). Defendant has previously acknowledged that a Rule 35(b) motion must be filed by the government before the Court may modify a sentence based on that rule. See Dkt. # 22, at 3; Dkt. # 50, at 17. As no motion has been filed by the government, this Court may not modify defendant's sentence pursuant to Fed. R. Crim. P. 35(b).

---

[6]      The Tenth Circuit has suggested that, in particularly egregious cases, it may be justified in taking corrective action despite the lack of a motion. United States v. Perez, 955 F.2d 34, 35-36 (10th Cir. 1992). However, this power does not appear to have been extended to district courts. Id. at 35 (describing the filing of a motion as "jurisdictional"). Additionally, even if this Court did have to power to take corrective action, this case is not so egregious as to justify relief.

**F.     Failure to Explain Why His Sentence Would Not Run Concurrently**

Defendant cites <u>United States v. Cochrane</u>, 702 F.3d 334 (6th Cir. 2012), for the proposition that a court must explain why it is imposing consecutive, as opposed to concurrent, sentences.[7] Dkt. # 41, at 23.  First, this Court <u>did</u> explain that consecutive sentences were mandatory, and defendant acknowledged as much in writing.  Dkt. # 50, at 10-11; Dkt. # 22, at 11-12; Dkt. # 20, at 3.  Second, <u>Cochrane</u> is a Sixth Circuit case, and is not binding on this Court.  Even if it were, <u>Cochrane</u> is distinguishable.  The appellate court in <u>Cochrane</u> was unable to effectively review the district court's sentence because the imposition of consecutive sentences was optional, not mandatory, and the district court had failed to explain why it chose to impose consecutive sentences.  702 F.3d at 346-47.  Here, as discussed <u>supra</u>, consecutive sentences were mandatory, and the Court explained that.  The concerns raised in <u>Cochrane</u> are inapplicable to a situation in which consecutive sentences are mandatory, and it does not apply.  The imposition of defendant's sentence was proper.

**G.     Ineffective Assistance of Counsel**

Defendant claims that defense counsel provided ineffective assistance.  Dkt. # 41,  at 21.  Defendant argues that defense counsel failed to adequately argue for safety valve relief.  <u>Id.</u>[8]  He asserts that this Court failed to explain to him why his sentence would run consecutively and not concurrently.  <u>Id.</u> at 23.  Additionally, he states that "my attorney never made any plans to try to get

---

[7]     To the extent that plaintiff may be arguing that counsel was ineffective for failing to argue that his sentence should have run concurrently and not consecutively, plaintiff's claim fails.  As discussed <u>supra</u>, 18 U.S.C. § 924(c)(1) mandates that his sentences run consecutively.  Consequently, this claim fails to meet the second prong of <u>Strickland</u>, as no prejudice has been shown.

[8]     Defendant also characterizes this argument as defense counsel failing to inform him that he would not get a downward departure because he was pleading to possession of a firearm in connection with a drug offense.  Dkt. # 56, at 3.

me the best sentence, he just told me to plea, and not to appeal because I will get more time . . . ." Id. at 4. In contradiction, he also states that "my attorney never told me that I could appeal." Id. He also claims that "my defense attorney never care  for his client, (me), he never told me I could appeal, is a fact that he told me that I had no appeal." Id. at 7.  "My attorney made all the deals, I was always in the dark."  Id. at 10.  Defendant also argues that his attorney should have argued for the applicability of Fed. R. Crim. P. 35,  and that defendant never possessed a firearm "in connection with a drug offense."  Dkt. # 56, at 2-3.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694; see also

Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003). A court deciding an ineffectiveness claim "need not determine whether counsel's performance was delinquent before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697.

### 1.      Failure to Argue for "Safety Valve" Relief

Defendant argues that defense counsel was ineffective because he failed to adequately argue for "safety valve relief." Dkt. # 42, at 21. This argument fails to meet the second prong of Strickland; as discussed supra, plaintiff was not eligible for 18 U.S.C. § 3553(f) relief. Therefore, plaintiff suffered no prejudice even if defense counsel failed to argue for the application of 18 U.S.C. § 3553(f). Defense counsel was not constitutionally deficient in this regard. To the extent that plaintiff is arguing that defense counsel failed to explain that he was not eligible for section 3553(f) relief, the second prong of Strickland is still not met. If a defendant has pleaded guilty, as is the case here, prejudice arises only if, but for counsel's errors, the defendant would not have pleaded guilty and would instead have gone to trial. Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001). An insistence that defendant would have gone to trial but for counsel's errors is "necessary" to entitle a defendant to relief. Id. At no point in his motion or reply does defendant even allege that he would have gone to trial. See generally Dkt. ## 41, 56. Without meeting this low bar, defendant cannot prove that he was prejudiced by defense counsel's alleged failure to inform defendant that

he was not eligible for section 3553(f) relief.[9]  Defense counsel was not constitutionally deficient in this regard either.

## 2.     Appeal

Defendant states that, somewhat contradictorily, defense counsel told him "not to appeal because [he would] get more time" and that defense counsel "never told [him] that [he] could appeal." Dkt. # 41, at 4.[10]  Defense counsel states that he informed defendant of his right to appeal. Dkt. #  55-1, at 2.[11]  Even assuming that defense counsel did not inform defendant of his right to appeal, he was not ineffective in failing to do so.  A constitutionally imposed duty to consult with a defendant about an appeal exists "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

---

[9]     Additionally, the prosecution's case against defendant was very strong.  See Dkt. # 50, at 27-30;  Miller, 262 F.3d at 1072 (stating that the strength of a prosecutor's case is often viewed as "the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial").

[10]     Defendant does not allege that he requested that defense counsel file an appeal.  See generally Dkt. ## 41, 56.  If he had made that allegation, defendant would be entitled to an evidentiary hearing to determine if he requested that an appeal be filed.  See United States v. Garrett, 402 F.3d 1262, 1267 (10th Cir. 2005).  As defendant has not, no hearing is mandated by Garrett.  See United States v. Shaw, 292 F. App'x 728, 731 (10th Cir. 2008) ("The district court was not required to hold an evidentiary hearing here because, prior to his filings with this Court, Shaw never claimed his attorney promised to file a notice of appeal or ignored a specific request to do so.").  Because "the motion and the files and records of the case conclusively show that the [defendant] is entitled to no relief," no evidentiary hearing is necessary.  28 U.S.C. § 2255(b).

[11]     The fact that defendant's plea agreement contained an appellate waiver supports defense counsel's contention that he discussed appellate rights with defendant.  See United States v. Parker, 720 F.3d 781, 785 n.3 (10th Cir. 2013).

Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).   In making this determination, courts must take into account all the information counsel knew or should have known.  Id.

Defendant was informed by this Court that, subject to his appellate waiver in his plea agreement, defendant "may have a right to appeal the sentence that has been imposed."[12]  Dkt. # 51, at 11; see Roe, 528 U.S. at 479-80 (stating that, if a sentencing court's instructions to defendant as to his appeal rights are sufficiently clear and informative and if there is no reason to believe defendant either wishes to appeal or rationally should wish to appeal, it may be reasonable for counsel to decline to consult with defendant about his appeal rights).  Defendant acknowledged that he understood that he must file an appeal within fourteen days of the judgment and that, if he could not afford an appeal, he could apply in forma pauperis.  Dkt. # 51, at 11.  Additionally, the facts that defendant pleaded guilty, that defendant's plea agreement contained an expansive appellate waiver, and that defendant received a sentence that was more favorable than the sentence contemplated by the plea agreement (because of the government's motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1) weigh against a finding that defense counsel acted ineffectively if he failed to consult with defendant about his right to appeal.  See Roe, 528 U.S. at 480 ("Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly

---

[12]     The Court had previously reviewed the scope of the appellate waiver with defendant.  Dkt. # 50, at 16-18.

reserved or waived some or all appeal rights."). There is simply nothing in the record to suggest that defendant reasonably demonstrated to defense counsel that he was interested in appealing. Nor is there a reason to think that a rational defendant would want to appeal. Defendant's expansive appellate waiver prohibited all appeals, except for appeals from a sentence that exceeds the statutory maximum. Dkt. # 22, at 3. Defendant's sentence did not exceed the statutory maximum; in fact, his sentence for count two was less than the statutory minimum. <u>See</u> Dkt. # 39.[13] As discussed <u>supra</u> and <u>infra</u>, there is nothing to suggest that defendant's waiver is invalid. Because, after a consideration of all relevant factors, neither of the conditions articulated in <u>Roe</u> is applicable, defense counsel did not have a duty to consult with defendant regarding his appellate rights. The first prong of <u>Strickland</u> is not met with regard to this claim.

### 3. Failure to Consult with Defendant

Defendant argues that his defense counsel was constitutionally ineffective because defense counsel kept him "in the dark." Dkt. # 41, at 10. Defendant's argument contradicts at least three sworn statements made by defendant. Defendant admited in his plea agreement that he "reviewed every part of [the plea agreement] with my attorney . . . . Further, I have consulted with my attorney and fully understand my rights with respect to sentencing . . . ." Dkt. # 22, at 17. Additionally, defendant declared that he was "satisfied with the representation of my attorney in this matter." <u>Id.</u> In his petition to enter a plea of guilty, defendant stated that his attorney "reviewed the charge, discovery and applicable law with me. We have discussed possible defenses, pretrial motions, jury trial and the sentencing guidelines." Dkt. # 20, at 2. Defendant also stated that "I believe that my attorney has done all that anyone could do to counsel and assist me, AND THAT I AM SATISFIED

---

[13]     Additionally, defense counsel believed that an appeal was inadvisable. Dkt. # 55-1, at 2.

WITH THE ADVICE AND HELP [HE] HAS GIVEN ME."  Id. at 4 (emphasis in original).

Defendant further stated that "I swear that I have read, understood, and discussed with my attorney,

each and every part of this Petition to Enter Plea of Guilty . . . ."  Id. at 5.  At his change of plea

hearing, defendant stated that he was satisfied with Mr. Greubel:

> THE COURT:        Have you fully discussed those charges and the case in general with
>                   Mr. Greubel as your counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:        Are you fully satisfied with the counsel, representation and advice
>                   given to you in this case by your attorney, Mr. Greubel?
>
> THE DEFENDANT: Yes, ma'am.

Dkt. # 50, at 6-7.  Additionally, defense counsel states that he reviewed the entire plea agreement

with defendant prior to his change of plea.  Dkt. # 55-1, at 3.  Defendant's claim that he was "in the

dark" is without merit; defense counsel was not constitutionally ineffective in failing to adequately

inform defendant.[14]

### 4.    Failure to Argue that Defendant Never Possessed a Firearm in Furtherance of a Drug Offense

Defendant argues that defense counsel should have argued that he did not possess a firearm

and that he did not possess a firearm in furtherance of a drug offense.  Dkt. # 56, at 2.  Again, this

directly contradicts defendant's prior sworn statements.  In his petition to enter a plea of guilty,

defendant stated that "knowingly possessed a firearm in furtherance of the drug trafficking crime

alleged in Count II" and that he kept the firearm in his home to protect him and his

---

[14]    This claim also fails to meet the second prong of Strickland; as discussed supra, defendant
        has failed to adequately allege that he was prejudiced by defense counsel's alleged failure
        to adequately inform him.

methamphetamine. Dkt. # 20, at 2. At his change of plea hearing, defendant acknowledged that he possessed a firearm and that he possessed it in connection with a drug offense:

THE COURT: And you understand that you are agreeing that you possessed that firearm in furtherance of the crime in Count Two; do you understand?

THE DEFENDANT: Yes.

.   .   .

THE COURT: And you kept it in your home to protect you and the methamphetamine stored in your home; is that correct?

THE DEFENDANT: Yes.

Dkt. # 50, at 25-26. And in his plea agreement, defendant admitted that he "knowingly possessed the 9mm firearm described in the indictment for my protection and for the protection of the methamphetamine and the proceeds of the sale of that methamphetamine." Dkt. # 22, at 7. Defendant cannot now argue that defense counsel should have argued that the facts to which defendant repeatedly admitted were untrue. This argument fails to meet the first prong of the Strickland test.

### 5. Failure to Argue for Fed. R. Crim. P. 35(b)

Defendant argues that defense counsel was ineffective for failing to argue for Rule 35(b) relief. Defendant is unable to demonstrate prejudice under the second prong of Strickland on this ground. See Claxton v. United States, Civ. No. 12-00433 JMS-KSC, Cr. No. 10-00108 JMS, 2013 WL 1136704, at *10 (D. Haw. Mar. 18, 2013); Hernandez v. United States, Nos. 5:07 CR 441, 5:09 CV 1286, 2011 WL 335032, at *2 (N.D. Ohio Jan. 31, 2011); see also United States v. Taylor, 414 F.3d 528, 535-36 (4th Cir. 2005); United States v. Palomo, 80 F.3d 138, 142 (5th Cir. 1996). Defense counsel was not constitutionally ineffective on this ground.

### 6.    Failure to Attempt to "Get [Defendant] the Best Sentence"

Finally, defendant argues that defense counsel "never made any plans to try to get me the best sentence." Dkt. # 41, at 4. This nonspecific allegation[15] is insufficient to support a claim of ineffective assistance of counsel. It also fails to meet the first prong of the <u>Strickland</u> test because, as discussed <u>supra</u>, it contradicts numerous statements by defendant in which he stated that he was satisfied with defense counsel's representation.[16] Each of defendant's grounds for ineffective assistance of counsel fails to meet at least one prong of the <u>Strickland</u> test. As with defendant's other claims, defendant's claim of ineffective assistance of counsel is meritless. Defendant's motion should be denied.

### III.

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). After considering the record

---

[15]    Defendant's specific allegations have been addressed <u>supra</u> and have been found to be without merit.

[16]    Additionally, defendant's assertion is less than credible given that defense counsel worked to secure a sentence for count two that was substantially less than the mandatory minimum. Dkt. # 39, at 2; Dkt. # 55, at 1.

in this case, the Court concludes that a certificate of appealability should not issue, as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 41) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**DATED** this 2nd day of September, 2014.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE